**JS**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-----------------------------------------------------------X
SIRPATRICK IWU,

|  |  |
|---|---|
| | Civil Action No. **17   5265** |
| Plaintiff, | |
| | |
| -against- | **COMPLAINT** |
| | |
| | Plaintiff Demands A<br>Trial by Jury |
| ARDLEIGH GROUP, LLC (individually) | |
| ARDLEIGH GROUP, LLC, d/b/a FIELD STRATEGIES, | |
| RODNIE JAMISON (individually), and | |
| and JOSEPH DEROCHE (individually) | **FILED** |
| | **NOV 22 2017** |
| | KATE BARKMAN, Clerk |
| Defendants. | By_____ Dep. Clerk |
-----------------------------------------------------------X

Plaintiff, SIRPATRICK IWU, as and for his Complaint against the above-named Defendants,

respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42

U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, and by the Civil Rights Act of

1991, Pub. L. No. 102-166 ("Title VII")), the Pennsylvania Human Relations Act, as

amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and the Philadelphia Fair Practices

Ordinance, § 9-1100 *et. seq.* ("PFPO"), and seeks damages to redress the injuries Plaintiff

has suffered as a result of being discriminated against, and retaliated against by his

employer solely due to his gender, together with retaliation and hostile work

environment.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under the Title VII. The Court also has supplemental jurisdiction over the State and City Causes of Action.

3. Venue is proper in this district based upon Defendants' principal place of business within the County of Philadelphia, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania.    Additionally, the events alleged herein took place in Philadelphia, Pennsylvania within the Eastern District of Pennsylvania at Defendants' office located at 1722 Cecil B. Moore Avenue, Philadelphia, PA 19121.

4. On or about December 20, 2016, Plaintiff filed charges with the EEOC against Defendants as set forth herein.

5. Plaintiff's claim was dual filed and is currently pending with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Rights.

6. On or about August 28, 2017, the Equal Employment Opportunity Commission issued Plaintiff a Right to Sue Letter.

7. This action is being commenced within 90 days of receipt of the EEOC Right to Sue Letter.

## PARTIES

8. Plaintiff SIRPATRICK IWU (hereinafter also referred to as Plaintiff and/or "IWU") is an individual male who is a resident of the State of Maryland.

9. That at all times herein mentioned, Defendant ARDLEIGH GROUP, LLC (hereinafter referred to as Defendant and/or "ARDLEIGH GROUP") is a domestic business corporation duly existing under the laws of the State of Delaware.

10. That at all times herein mentioned, Defendant ARDLEIGH GROUP did and continues to do

business as FIELD STRATEGIES (hereinafter collectively referred to as Defendant and/or "FIELD STRATEGIES") operates an office located at 1722 Cecil B. Moore Avenue, Philadelphia, PA 19121.

11.   That at all times material, Defendants operated and continue to operate a campaign and marketing strategy team to increase brand awareness for clients, while also providing campaign support to a number of candidates nationwide.

12.   That at all times material, Defendant FIELD STRATEGIES did and continues to operate and compensate its employees through a number of different aliases nationwide, including, but not limited to, ARDLEIGH GROUP, LLC, FIELD STRATEGIES, and BLOCK BY BLOCK, in addition to naming campaigns after various candidates' names.

13.   At all times material Defendant RODNIE JAMISON (hereinafter referred to as Defendant and/or "JAMISON") was and is an employee for Defendant FIELD STRATEGIES.

14.   At all times material Defendant JAMISON was and is employed as a Field Office Manager for Defendant FIELD STRATEGIES.

15.   At all times material, Defendant JAMISON held supervisory authority over Plaintiff.

16.   At all times material Defendant JOSEPH DEROCHE (hereinafter referred to as Defendant and/or "DEROCHE") was and is an employee for Defendant FIELD STRATEGIES.

17.   At all times material, Defendant DEROCHE was employed as a Project Manager for Defendant FIELD STRATEGIES.

18.   At all times material, Defendant DEROCHE held supervisory authority over Plaintiff.

19.   At all times material, Defendants ARDLEIGH GROUP and FIELD STRATEGIES were the joint and solo employers of Defendants JAMISON and DEROCHE.

20.   At all times material, Defendants ARDLEIGH GROUP and FIELD STRATEGIES were

Claimant's joint and solo employer.

## MATERIAL FACTS

21.    In or around March 2016, Plaintiff began working as a Campaign Lead Organizer for
       Defendant FIELD STRATEGIES.

22.    Plaintiff worked on a campaign in the State of Maryland followed by another in the State
       of Indiana.

23.    In or around July 2016, Plaintiff approached Defendant FIELD STRATEGIES' Vice
       President, Ryan Gardner (hereinafter referred to as "Mr. Gardner") and explained to him
       that Plaintiff's girlfriend, and their two children lived in Baltimore, Maryland.   Plaintiff
       further explained that while Plaintiff wanted to keep his job, the extensive distance
       between Plaintiff and his family was becoming too stressful and taxing on Plaintiff's
       family and that Plaintiff feared that he would have to leave his employment if he was not
       moved closer to his family.

24.    In light of the foregoing, Plaintiff requested to be placed on a new campaign.   Defendants
       complied and transferred Plaintiff to Defendants' Philadelphia office located at 1722 Cecil
       B. Moore Avenue, Philadelphia, PA 19121 (hereinafter referred to as "Philadelphia
       Office."   Defendants further stated that Plaintiff could take the train home to Maryland
       to visit his family on the weekends.

25.    Once transferred and in or around July 2016, Plaintiff began working as a Lead Organizer
       at Defendants' Philadelphia Office.

26.    In or around mid-July 2016, Defendant JAMISON was hired to be a Field Office Manager
       for Defendant FIELD STRATEGIES at Defendants' Philadelphia Office.

27.    Almost immediately upon Defendant JAMISON's hire, Defendant JAMISON began
        making sexually harassing comments to Plaintiff on weekly basis, if not more frequently.

28.    By means of example only and not meant to be an exhaustive list, Defendant JAMISON
        told Plaintiff, "Sirpatrick, put it on the table, let me see how big it is." [*referring to
        Plaintiff's endowment*].    Defendant JAMISON frequently made comments about how
        large his endowment must be because he was such a tall, athletic built person.
        Defendant JAMISON also made comments to Plaintiff like, "See this snatch." [*referring
        to Defendant's own vaginal area*].

29.    In or around late July, Plaintiff, while joking with co-workers, placed his leg up on the
        table in a pose similar to the Captain Morgan slogan.    Almost immediately thereafter,
        Defendant JAMISON made a comment about how much she liked Plaintiff in that pose.

30.    In or around August 2016, Defendant JAMISON told Plaintiff that he was having
        relationship problems with his girlfriend, because "he was not fucking her enough."

31.    At all times material, Plaintiff felt uncomfortable about the comments, however Plaintiff
        was afraid to report the unwelcome and illegal sexual harassment because Defendants
        made it known that Defendant JAMISON was highly valued at the organization because
        of her connections within the Philadelphia Community.

32.    In or around September 2016, while Plaintiff was attaching papers to clip boards,
        Defendant JAMISON approached Plaintiff from behind and slapped Plaintiff on the
        buttocks.    Almost immediately thereafter, Defendant JAMISON said in words or
        substance, "Damn boy! Your ass is so hard it almost broke my hand.    You and that strong
        ass need to lay off the gym."

33.    In response, Plaintiff immediately told Defendant JAMISON that he was uncomfortable

5

with the unwelcome advances and asked her not to touch him again.

34.    Shortly thereafter, Plaintiff was instructed by Defendants' Project Manager, Mr. Joseph

DeRiche (hereinafter referred to as "Mr. DeRiche") to rearrange the office due to an

influx of campaign canvassers that were relocating to Philadelphia to concentrate efforts

in and around the Philadelphia area.

35.    Despite the direct orders from Plaintiff's other superiors, Defendant JAMISON told Plaintiff

not to rearrange the office.

36.    Defendant JAMISON became confrontational with Plaintiff and as such, the tension

continued to escalate between Plaintiff and Defendant JAMISON as a result of Defendant

JAMISON's unlawful conduct.

37.    Approximately two days later, Defendant DEROCHE asked Plaintiff to go out for a drink

after work.    Plaintiff agreed and joined Defendant DEROCHE for a drink.

38.    Defendant DEROCHE told Plaintiff that it was obvious that Defendant JAMISON and

Plaintiff had a contentious relationship and as a result, Defendants had decided to relocate

Plaintiff from the Philadelphia campaign to a campaign in Pittsburgh.

39.    In response, Plaintiff objected and explained in detail to Defendant DEROCHE that

Defendant JAMISON had been sexually harassing Plaintiff and that the sexual

harassment created a hostile work environment for Plaintiff.

40.     Defendant DEROCHE disregarded Plaintiff's report of Defendant JAMISON's sexual

harassment and the hostile work environment that resulted therefrom and directed

Plaintiff in words or in substance, "please, don't tell me that."

41.    Almost immediately thereafter, Plaintiff asked if the "relocation" was decided because

Plaintiff expressed his discomfort to Defendants regarding Defendant JAMISON's

unwelcome and illegal sexual advances and comments.   Plaintiff further explained to
Defendant DEROCHE that he felt the move was in retaliation for not responding to
Defendant JAMISON's advances.

42.     Plaintiff stated that he took the placement in Philadelphia to be closer to his girlfriend and
their children. He explained that his family relations were already strained due to his
extensive travel and time away from home and that moving to Pittsburgh could create
further stress on his relationship with his family as Pittsburgh was approximately 150
miles away from Plaintiff's family.

43.     Defendant DEROCHE explained the Defendant JAMISON was highly valued at the
organization because of her connections in the Philadelphia community and that
Defendants decided that in order to alleviate the tension with Defendant JAMISON
Plaintiff would have to be relocated to Pittsburgh.

44.     In addition, Defendant DEROCHE threatened that Plaintiff would be fired if he did not
accept the position in Pittsburgh.

45.     Defendants never investigated Plaintiff's claims of sexual harassment and never took
appropriate remedial action.

46.     Defendants further retaliated against Plaintiff for his objections to the hostile work and
sexual harassment Defendants forced Plaintiff to endure, as Defendants forced Plaintiff to
bear the cost of Plaintiff's expense incurred from moving to Pittsburgh.

47.     When Plaintiff explained to his co-workers that he was leaving for Pittsburgh, the
co-workers immediately stated, "It's because of her, isn't it?" [*referring to Defendant
JAMISON*].

48.     Plaintiff's co-workers told him that Defendant JAMISON made statements like "See how

I got him out of here."

49.    Plaintiff was retaliated against because of his unwillingness to concede to Defendant
       JAMISON's unwelcome and illegal sexual harassment, and in retaliation for reporting
       those advances to Defendant DEROCHE.

50.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded,
       victimized, embarrassed and emotionally distressed.

51.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will
       continue to suffer the loss of income, the loss of salary, bonuses, benefits and other
       compensation which such employment entails, and Plaintiff also suffered future pecuniary
       losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life,
       and other non-pecuniary losses.    Plaintiff has further experienced severe emotional and
       physical distress.

52.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full
       knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants,
       jointly and severally.

53.    The above are just some examples, of some of the discrimination to which Defendants subjected
       Plaintiff.

54.    Defendants have exhibited a pattern and practice of not only discrimination but also
       retaliation.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

55.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
       this complaint.

8

56.    Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer

practices It shall be an unlawful employment practice for an employer – (1) to fail or

refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin."

57.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e '

*et seq.*, by discriminating against Plaintiff because of his sex/gender.


### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendants)

58.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

59.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides

that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any
practice made an unlawful employment practice by this subchapter, or because [s]he has
made a charge, testified, assisted or participated in any manner in an investigation,
proceeding, or hearing under this subchapter."

60.    Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et*

*seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of

employment because of his opposition to the unlawful employment practices of

Defendants.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

61.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62.     The PHRA § 955 provides that   it shall be an unlawful discriminatory practice:   "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

63.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his sex/gender.

64.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

65.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

66.     PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any

manner against any individual because such individual has opposed any practice

forbidden by this act, or because such individual has made a charge, testified or assisted,

in any manner, in any investigation, proceeding or hearing under this act."

67.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating,

and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the

unlawful employment practices of Plaintiff's employer.

**AS A FIFTH CAUSE OF ACTION**
**FOR AIDING & ABETTING UNDER STATE LAW**

68.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

69.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any

person, employer, employment agency, labor organization or employee, to aid, abet,

incite, compel or coerce the doing of any act declared by this section to be an unlawful

discriminatory practice, or to obstruct or prevent any person from complying with the

provisions of this act or any order issued thereunder, or to attempt, directly or indirectly,

to commit any act declared by this section to be an unlawful discriminatory practice."

70.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA §

955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**AS AN SIXTH CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER THE PHILADELPHIA**
**CITY ADMINISTRATIVE ORDINANCE**

71.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

72.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an

unlawful discriminatory practice: "It shall be an unlawful employment practice to deny

11

or interfere with the employment opportunities of an individual based upon his or    her

race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical

condition), sexual orientation, gender identity, religion, national origin, ancestry, age,

disability, marital status, familial status, genetic information, or domestic or sexual

violence victim status, including, but not limited to, the following: (a) For any employer

to refuse to hire, discharge, or otherwise discriminate against any individual, with respect

to tenure, promotions, terms, conditions or privileges of employment or with respect to

any matter directly or indirectly related to employment."

73.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia

Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working

conditions, and otherwise discriminating against Plaintiff because of his sex/gender.

74.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs

of Philadelphia Fair Practices Ordinance Chapter 9-1100.

<strong>AS AN SEVENTH CAUSE OF ACTION FOR<br>RETALIATION UNDER THE PHILADELPHIA<br>CITY ADMINISTRATIVE ORDINANCE</strong>

75.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

76.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be

unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or

otherwise penalize, retaliate or discriminate in any manner against any person because he,

she or it has complied with the provisions of this Chapter, exercised his, her or its rights

under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or

assisted in any manner in any investigation, proceeding or hearing hereunder."

77.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia
       Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of
       Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A EIGHTH CAUSE OF ACTION FOR
## AIDING & ABETTING UNDER THE PHILADELPHIA
## CITY ADMINISTRATIVE ORDINANCE

78.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
       this complaint.

79.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be
       unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or
       coerce the doing of any unlawful employment practice or to obstruct or prevent any
       person from complying with the provisions of this Section or any order issued hereunder
       or to attempt directly or indirectly to commit any act declared by this Section to be an
       unlawful employment practice."

80.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia
       Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and
       coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A NINTH CAUSE OF ACTION FOR
## ASSAULT AND BATTERY
## (As Against Defendant JAMISON)

81.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
this complaint.

82.    That Defendant JAMISON assault and batter Plaintiff herein and did cause unwelcomed
contact.

83.    That Plaintiff did not consent to the contact and that the above contact was offensive.

84.     Plaintiff was damaged thereby.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:     November 21, 2017
           Philadelphia, PA

                          **DEREK SMITH LAW GROUP, PLLC**
                          *Attorneys for Plaintiff*

                          By: /s
                              Chloe E. Gartside, Esq.
                              chloe@dereksmithlaw.com
                              1845 Walnut Street, Suite 1601
                              Philadelphia, Pennsylvania 19103
                              (215) 391-4790